I'm here representing Mr. Bill Lee with his consent. I do have a 7-Eleven license. Good morning, Your Honors. Assistant State's Attorney Brian Levitsky on behalf of the people Joining me at table today is 7-Eleven senior law student Arturo Arriaga who assisted in the preparation of the people's meeting. Are you going to let him do any arguing? No, Your Honor. I'll be arguing today. All right. Since you probably don't know clearly the rules, it's 15-15 and maybe a few minutes at the end. So we don't hold strict to it, but we don't want you spending five hours repeating yourself. Sure. I don't want that either. Okay. Okay, you may proceed. Thank you. And speak up because these mics are only for purposes of recording. Sure, sure. Good morning, Your Honors. May it please the court. Mr. Lee was convicted and sentenced under the defacing identification marks of firearms statute. His conviction should be reversed where the state failed to prove that he knew that the gun was defaced. Today we ask this court to decide a relatively narrow legal question whether in light of more recently decided cases which expanded Second Amendment protections, the defacement statute should be reexamined and reinterpreted to require the state to prove not just possession of a defaced firearm, but knowledge of the nature of defacement of the weapon. So today I plan to concentrate on argument one, which deals with the interpretation of the statute, and I will briefly address argument two regarding the trial court's erroneous answer to a jury question, and argument three, which deals with the highly prejudicial and irrelevant testimony elicited by the state. So first, under a faithful reading of the statute, which gives effect to the intent of the legislature, knowledge of defacement is an essential element of the offense. The state concedes in its brief that the legislature intended to target defacement as the crime and not mere possession. So defacement does not just bear on the commission of the offense as Stanley held, but defacement is actually a core element of the offense. But does that necessarily mean that a mens rea requirement attaches to it? I mean, there are elements of some criminal offenses where there's no mens rea requirement, right? Here we believe it should attach, the mens rea of knowingly should attach both to possession and to the defacement. And that's highlighted by the fact that this statute was amended in 2000 to correct an issue that created a strict liability crime. And we know that the Illinois General Assembly disfavors strict liability crimes, and so the original statute essentially said that if a firearm is defaced, that is evidence of the fact that the possessor defaced it. And so the legislature corrected that issue. But unfortunately, with the interpretation of Stanley as it is, those constitutional issues still remain. But yet the legislature hasn't done anything further with people such as you inferring what I say is the statute it's inferred in. But the point being, they haven't done anything, and we have two cases that seem to go one way, and there is no other cases other than federal cases which we do not necessarily follow. That's correct. Of course, this court has no obligation to follow the federal cases, but it's our position that adopting a test that's more similar to the test used by the federal circuit eliminates constitutional concerns. And so here, for Mr. Lee certainly, but also for other defendants in the future or currently, this would be a benefit to them. It would eliminate a lot of burden on the courts in litigating this issue, just to merely require the state to meet this burden. And there are a lot of other statutes which do require that. For example, the possession of a motor vehicle statute would require the state to prove beyond a reasonable doubt not just that they possessed a stolen car, but that there was some circumstantial evidence pointing to the fact that the possessor knew. Perhaps there are wires hanging from beneath the steering console. That would be circumstantial evidence. It would be very easy for the state to present, and we believe that that's appropriate here in this case, especially where the Second Amendment protections have been strengthened after people v. Burns and people v. Aguilar, and those cases were decided after Stanley. So this statute just requires some new, some reexamination in light of these new protections. But do we read anything into the fact that Stanley interpreted the statute in 2009 and for nine years the legislature has not changed that interpretation? They could have easily done so. They certainly could have done so. I think, however, that because the legislature intended this to not be a strict liability crime, they didn't feel there was a need to change it. We believe that the legislature intended the mens rea of knowingly to apply both to possession and to knowingly. And so the statute is actually constitutional. It's just the interpretation of the statute that's raising these concerns. So there's no need for the legislature to amend the statute. It's appropriate the way it is. It's just the interpretation of it, and the state's not being held to the burden that this court now could reinterpret that statute to make it so that they are required to meet that burden. This case has been, Stanley's been on the books for nine years. Yes. And people in courts and other judges have adjusted their lives and ways of ruling on cases based on Stanley, including this trial judge in this case. He followed the law. What is compelling about this case that we should buck years of judges' decisions to change something different? Sure. So what's really compelling about this case and others like it is that the statute, as it's being interpreted, has the effect of criminalizing potentially innocent conduct. You're saying it's innocent conduct? For someone to have possessed a weapon that they did not necessarily know was defaced could absolutely. Well, in this case, you've got three officers saying he knew. We do have that here, but we also have Mr. Lee's own testimony, which directly contradicts that of the officers. And so we do argue in our briefs that the state, even if they weren't required, or even if they had been required to meet that burden, they wouldn't have reached it, that the evidence here was not sufficient to prove beyond a reasonable doubt that Mr. Lee specifically knew that the weapon was defaced. And we have that because of the factors that the federal courts use. And, of course, we do understand that this court is not bound by those. But the federal statute has the word knowingly in it, right? It says you knowingly possess a gun that is defaced. And so does this statute, yeah. This statute doesn't say it in its language, though. We judicially imported that. That is true. I mean, in federal, I mean, there's a basic canon of construction in the statute, whereas if there's a mens rea, you know, usually it's in the form of an adverb, knowingly, intentionally, and then they have a series of elements that follow that that word modifies each of the elements. That's a textual interpretation. Here we don't have that. We judicially engrafted properly so in Stanley the word knowingly. But can we engraft that and then apply that distributional principle? Yes, because so the knowingly that has been engrafted, as you said, should apply both to possession where it lies sort of in the statute and also to the defacement. And that's because the state is required to prove things like status. So they are required to prove that someone has an illegal status as a felon or that their age is unlawful for possession of a weapon. And so here, too, they should be required to prove something such as nature of the weapon. So if they have to prove status, they should also have to prove nature of the weapon. And so that's why we argue that knowingly should not apply just to possession but also to the element of defacement. Because, of course, before Burns and Aguilar were decided, mere possession outside the home of a weapon was presumptively unlawful. And now afterwards, we know that we can't presume those things. And that's why the state has to prove these elements of status, age, not having a firearm identification card, felon status, things like that. And so they should also be held to that standard where something is bearing, not just on the commission of the offense, but it's court of the offense. The statute reads defacing identification marks of a firearm. So for the state not to have to prove that the possessor knew about the defacement does have the potential to criminalize innocent conduct. Someone drops a weapon, now it's been defaced, they didn't know about it, and they're liable under the statute criminally. And as I was just briefly discussing, even if the state had been held to this burden, they had not proved beyond a reasonable doubt that Mr. Lee knew about the defacement. So you ignore the three tabs? Excuse me? You just ignore the testimony of the three police officers? No, we do not ignore that. We're just weighing in against it, and we believe that the sufficiency, Mr. Lee's own testimony, he's a college graduate, no criminal record, he never owned a gun, he doesn't like them, he was driving someone else's car in this case. So even if he knew about the guns being in the car, it's highly unlikely that under these circumstances where he's driving a friend's vehicle that he had time to inspect the weapons for defacement of identification. And so we can weigh that against the testimony of the other officers. And we think it's telling that each officer, we do have three officers, that they each saw one different piece of the event. So one allegedly saw him take the gun out of the car. One saw him run through the alley. One saw him drop the weapon. So we're piecing together their testimony, which, again, just goes to the sufficiency. It was not one officer who saw the entire thing. They saw it in different pieces from 25 yards away for just a matter of seconds. And so all of those factors go to a finding that the state did not meet their burden here in this case. And this was an issue for the jury to decide, of course. And they clearly struggled with this issue for some time. They deliberated for a long time on the issues. And ultimately, they sent a question out to the judge because they were confused about the element of whether or not Mr. Lee had to know about the defacement. But they were also confused about a lot of the other issues, and they were certainly weighing the sufficiency of the evidence in this case. And so if this court is to accept that Stanley incorrectly interpreted this statute, then the jury instruction that was provided to the jury on this issue was incorrect because it directly tracks with the statute. But, of course, they are directly linked. So this court would have to find those issues both. And I will just briefly discuss the jury question that was sent out because we do believe it bears on the first issue, which is that after deliberating for about three hours, the jury sent this question to the judge asking, does it matter if Mr. Lee actually knows that the identification marks are defaced on the firearm? And over defense counsel's objection, asking to just send back a generic, continue to deliberate, you have the facts and the law, the judge did answer no to this question, which we argue usurped the role of the jury as a trier of fact improperly. Because he followed the law. Correct. So if the judge believed he was following the law. You've got a way now. You're making a statement that the judge is wrong. You can't make that statement because he followed the law. Is he supposed to say, this isn't a good law, so don't follow it? No, we're arguing that he answered a question of fact for the jury. No, it's a question of law. Okay. Well, our argument is that it was a question of fact because it was answering a question which then pushed the jury to reach this verdict. It was for them to decide, in our opinion, that it was the jury's position to decide whether or not Mr. Lee knew about the defacement. And so he took that decision away from the jury by answering a question for them. You were doing good until the last. I think what Judge Smith is trying to say, sitting as a judge, and the lawyer cites Stanley and the judge has to make a decision, do I say that it does make a difference whether or not he has knowledge? And the judge looked at Stanley and said it doesn't. So he basically can't overrule the appellate court. So he basically followed what was the law. Right. So if the judge believed that that was the law, which he did, then he did answer the question appropriately. But he could have just not answered, is our argument. He could have declined to answer the question for them. And the odds are they still would have found him guilty. Well, I'm not sure that that's the case. We do have, that leads into the third argument here, is that there was inadmissible and highly prejudicial evidence elicited by the prosecutor in violation of the judge's pretrial order  as being known for narcotics trafficking. But that was highly irrelevant here where Mr. Lee was not charged with any drug trafficking crimes. This was a gun charge. I mean, this case is exactly like people Viaggi, which dealt directly with that. You remind me of one of my law students. And one of the very first things, not law students, law clerks, when they came is I say we're going to take you to Austin and Madison on a Friday night and we're going to leave you there for an hour and see how long you last. And then guess what? They think the law a little different because they now know a lot of the laws may not be 100% correct, but they still help solve problems. So I'm saying you have to realize that when you're analyzing a case like this. I understand. So if there are no further questions on any of the issues here, I will just briefly conclude by saying that we do ask this court to reanalyze Stanley and we do ask that you reverse Mr. Lee's conviction outright or the alternative for a man for a new trial, where we believe that there were numerous errors committed both evidentiary and with the jury. So thank you. Thank you. May it please the Court. Your Honors, there are some weapons that are just so inherently dangerous that the state of Illinois has chosen to ban their possession, their mere possession. These include things like automatic rifles. They include things like sawed-off shotguns, and they include things like defaced firearms. That's why when Stanley looked at the legislation, looked at the statute for a defaced firearm, specifically subparagraph B, which talks about the possession of it, it said that the mere possession of such weapons, the defaced firearms, is the evil sought to be remedied by this offense to inter alia deter the possession of altered weapons. That's why knowledge goes to the mere fact of possession and not the fact of defacement itself. So you don't think it has to be implied even? Your Honor, I think what the people have to show are these two elements, knowledge and possession of a firearm which has been defaced. We don't have to show that. No mensure as to the defacement. As to the fact that the firearm was defaced. Doesn't that create a strict liability? It doesn't because people still have to show that the defendant knowingly possessed a weapon. What the legislature is saying here is if you're going to knowingly possess a weapon, you've got to know that that's a legal weapon. A defaced firearm isn't. Same thing with a sawed-off shotgun, which is why in People v. Ivy, the Illinois case that Stanley looked at extensively, it said, this is at page 653 of the opinion, because of the inherently dangerous nature of the sawed-off shotguns and their illegal status per se, we do not believe the legislature intended that the unlawfulness of the defendant's possession should depend on her familiarity or lack of familiarity with the characteristics of the gun she possessed. Rather, it was sufficient for the defendant's conviction that she have knowledge that she possessed the gun in question, which because of its dangerous capacity, was the subject of legislative enactment. Was the issue there knowledge that it was sawed off or knowledge that it was against the law? I believe it was knowledge that the barrel was less than 18 inches, which made it a sawed-off shotgun, and that's illegal. Is a weapon that's had its serial number defaced inherently dangerous? Sawed-off shotgun seems pretty dangerous. Sure. You can seal it under your coat and it's got the power to shoot some pretty powerful shot bullets. Sure. How is a gun more inherently? You may not like the fact that it's been defaced. I'm not saying it's not an evil we can't go after in this state, but what makes the gun more inherently dangerous on its face just because it has a defaced serial number? Well, I think the fact that a sawed-off shotgun is concealable actually gives us a hint of this, because the reason that if you can conceal it, you can create some barrier to knowledge or the ability of criminal investigators to detect this. You can bring it places in sight unseen, but if it faces a firearm, you can't trace it. That makes it inherently more useful for committing criminal offenses. Yeah, but is that what you mean when you say inherently dangerous? I mean, is that what that means? I mean, there's something bad about it being defaced. I get that. Right. I don't see how that makes the gun itself more inherently dangerous, like a sawed-off shotgun. Right. Well, I think when – let's talk about the Second Amendment, which the defendant brings up for the first time in the – for five reasons. Could I just ask you first? Yes. Stanley says that defacement is not an element of the offense. Do you agree with that? Is defacement an element of the offense? Defacement by itself is not a separate element from possession. It's not? You don't have to prove beyond a reasonable doubt that the serial number was defaced? No, we did have to prove that beyond a reasonable doubt, but not separately. Does that make it an element? It's tied to the possession, though. It's one of the characteristics that bears on the possession is how Stanley phrased it. So we had to submit it to the jury and prove it beyond a reasonable doubt, and the jury had to find it beyond a reasonable doubt. So doesn't that make it an element? It's part of the element of the possession, though. It's not a separate element such that we had to show knowledge of possession and knowledge of defacement. That's a separate question of whether you had a mens rea requirement, but is it an element of the offense? It is, right? Sure, yes. So Stanley was incorrect when he said it was not an element of the offense. It's something that we had to prove beyond a reasonable doubt. It's not a separate element such that I think that what we're doing is we're looking at knowledge and we're looking at possession of a firearm which is defaced. So we had to prove possession and defacement, but they're connected in a way that doesn't make them separate elements, but still a fact that we had to submit to the jury to be found beyond a reasonable doubt. Stanley was a bench trial, and didn't the court in Stanley say that knowledge is implied? And in that case, a judge sitting up there can certainly look at all the circumstances and imply knowledge and we presume judges apply the law. Here, this is the jury trial. And the question of knowledge, while you may say it's implied, apparently the jury had some question about that knowledge, and it was given an answer to a question saying it didn't matter. So doesn't that distinguish Stanley? Well, one thing is Stanley noted it was a matter of first impression at that point. So it wasn't this well-developed body of law. That's why Stanley went to Ivy, which was a shotgun case, as well as the session. Well, Ivy is different because you can look at the shotgun and see, whereas the serial number is somewhere on the gun. I believe it was on the butt of the handle. But getting back to the point. So we do have this jury note. It's submitted some time after the jury was sent to deliberate. So you're saying it doesn't matter. Don't worry about implying knowledge. We're imputing knowledge rather than implying knowledge. Because a judge can say, well, I'm looking at the circumstances. You ditched the shotgun. You tried to hide it. That's implied knowledge of guilt. They may have had some question, but you told them it didn't matter about that on the implied knowledge. Well, I think that maybe another way of phrasing this is that one of the reasons the legislature says no one can possess a sawed-off shotgun is because it can't be concealable. You don't have to know that you're actually going to conceal it. That's what makes it dangerous. So I think the same holds true with the defaced firearm. The legislature has banned them because they become more useful for criminal activity. And that's why we're saying if you're going to – if this defendant is going to just stop the car, open the trunk, reach in, and he finds a gun he's never seen before, knowing that he doesn't have a FOIA card or a CCL, he's just going to grab it without even determining whether it's a gun he could ever lawfully possess. That's what the Illinois legislature is saying you cannot do. Sounds like strict liability to me. That interpretation. If he knowingly possesses it, though. But he reaches in, he grabs the gun, but he may say, okay, there may be a violation of the unlawful use of weapons, but he's also going to say he's also guilty of defacement, which is a separate offense, even though he didn't know. If he's going to reach for it, then the duty is on him. That's strict liability then. And strict liability is limited to misdemeanors. Well, right. So misdemeanors and felonies where the legislature clearly intends it to be so. But they didn't do that here, did they? Is that your position, that it's an absolute liability statute? No, it's not strict liability because we do have this mental state which goes to possession. If the defendant said, I didn't know that I had the gun, for example. When we imply a mens rea to avoid it being an absolute liability statute, don't we typically imply the mens rea on the part of the statute that makes the act criminal? Right. But, again, this is – Well, but, you know, here possession of a gun is not criminal. Maybe it was when Stanley was a student, but it's not now. So that's why I wanted to talk about the Second Amendment issue. So initially, at the outset, the defendant never argued this in his opening brief, and so under Rule 341H7, at this point, it's considered forfeited. But, furthermore, the defendant says that Aguilar was decided after Stanley, and that's one of the reasons that maybe we should reconsider Stanley. Here's the thing, though. Aguilar and Burns said not that you can always possess a firearm under any circumstances under the Second Amendment. They said you can lawfully possess firearms outside of your home. And it cited cases like Heller at the time for that proposition. But Heller and McDonald, the other Supreme Court case following it, never established this unlimited right, neither did Burns or Aguilar. In fact, in Mosley, which came in 2015, the same year that Burns came out, specifically noted in Illinois that we can still prohibit the possession of a firearm without a FOIA card if you're under the age of 21. But counsel argued that's an element that you had to prove that there was no FOIA card. It's an element that had to be proven. Here, knowledge has to be proven, too, doesn't it? The knowledge of the defacement has to be proven, too, doesn't it? No. Just the knowledge of the possession of a firearm, which happens to be defaced. But there's certain restrictions allowed under the cases you cite. But here you're saying this must be strict liability. It's, again, we don't believe that when you have an offense that has this mental state that's been imputed to it, that it's necessarily strict liability. Again, it is a burden on the defendant. If he's going to knowingly possess this firearm, if he's got to make sure that it's a firearm that he can lawfully possess, that's why in Heller the court said the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes. Again, you've still got to show that this is a knowing possession. But after that, we've met the elements under Stanley. So your position is that it would be a crime even if it wasn't defaced? Well, I mean, under the facts of this case, the defendant never had a FOIA card or a concealed carry license. That's a different crime? Yeah. I'm not talking about that. Right. Okay, that's not what I meant to say. Just under this statute. This statute lawfully, constitutionally criminalizes conduct even if it's not defaced? If it's not. Standing alone is not a crime, right? Right. If it's just possession and we didn't have. But that's the only thing that you attach the mens rea to. The part about the statute that makes it a crime does not have a mens rea. Isn't that the problem here? I think maybe we can find some guidance in people versus laws. One of the cases interpreting Stanley in a slightly different context, which the defendant cites in his reply brief. In that case, the court noted that, well, we have this kind of ignorance of the law argument going on when defendants raise these issues. What happened in that case is the defendant, who had been previously convicted of possession of methamphetamine, later went out and purchased a 12-hour suit of fed, which contained a methamphetamine precursor, and made the similar due process argument the defendant raises today, that this is potentially criminalizing innocent conduct. And what the court said was requiring the state to prove the defendant knew the illegal nature or character of his or her act is simply requiring the defendant know the law, which is knowledge we impute to all defendants, regardless of the crime in question. I'm not talking about that. I'm not talking about ignorance of the law, and that's not what the defendant is talking about. I'm talking about the facts that make this a crime. The facts here that make this a crime are the defaced serial number, and we are not applying, Stanley did not apply a mens rea requirement to the part of the statute that makes it a crime. Isn't that the problem? It's not knowledge of the law. It's knowledge of the facts that make it a crime. I think that the situation in laws is actually, what's guiding about laws is that the ingredients were listed on the bottle, and the defendant, if he's going to purchase that, could have looked at the bottle and known that the ingredient was contraband if he didn't have a precursor. Same thing with serial numbers on a firearm. If they're defaced, then you couldn't possess it. So that's where I think laws guides us here. Again, the legislature is saying we still have to have knowledge of the if you do knowingly possess a firearm. So then that's basically saying what Stanley did say, there's implied knowledge, but the defendant has a right to rebut that. So if we do take the question of whether or not there is implied knowledge here, I think we do get it in a number of ways. If we're just going to look at facts in this case. But the problem that we have here is that the jury instruction says, don't worry about it. Actually, so a few things about the jury instruction. Actually, I wanted to clarify this. Go back to the implied knowledge question. Stanley clearly says there's implied knowledge. Somewhere in here it says the defendant has a right to rebut that implied knowledge. Here we told the jury, the jury had some question about knowledge and the instruction legally given by the judge said, don't worry about it. Right. So about the instruction itself, I think both parties referred to the instruction that was given to the jury initially as a pattern instruction. And I apologize for not catching this. We actually modified the instruction. So it doesn't really match up with what's in the pattern instruction, but the pattern instruction refers to a subsection A. Subsection B, which initially back in 2003 was this we can show prima facie that the defendant knew that the defendant was defaced if it's in his possession, which can be rebutted, which is maybe where some of that reasoning came from. It was then changed to be its own separate offense, and the pattern instructions never caught up with that. But that idea that there was this presumption if the defendant possesses it, as do subparagraph A, which is the knowing or intentional defacement, the Class II felony. But then I think if we do get to this question of whether or not we actually established that the defendant knew, we do have that inference here. And so assuming there was some problem with the judge's instruction, which I don't think there was, the judge, as you said, couldn't overrule Stanley or Falco or any of all these cases that have risen out of it, that knowledge of the defacement isn't an element to the offense. We do have bad evidence in this case. We do have Officer Goins saying that he talked to the defendant afterwards, gave him his Miranda warnings. The defendant said that he and Bob, the guns, already defaced. So we've got knowledge there. We also have some pretty strong circumstantial evidence in this case. It wasn't just the fact that the defendant opened the trunk, reached in, and happened to find a gun there. He was driving the car. He said it wasn't his. Fine. But then he's in control of it. He's the one who chooses to stop it, to open the trunk, and then reaches in. All of that very strongly circumstantially implies that he knew it was there. Otherwise, all that comment would be kind of inexplicable. The jury heard the evidence and heard the witnesses. They may have chosen to believe what the defendant says. But the instruction said don't worry about it. Right. So with regards to the implied knowledge that Stanley says the defendant has a right to rebut, that was taken away. Well, I would say that if that was an error, I think that Stanley can be read to say that it's not an element. But if that was an error, then it was harmless, where the evidence against this defendant was just overwhelming. Again, we had several police officers who testified to seeing the defendant have it, and we've got this evidence that he said he knew it was the face when he bought it. And we have this really strong circumstantial evidence showing that he knew it was there before he even reached for it. Yeah, we don't normally read too much into jury questions, but the jury literally asked that very question. Sure. And the judge said don't worry about that. The state doesn't need to approve it. Didn't he tell the jury stop thinking? And I'm not saying the judge followed Stanley. That's what he was supposed to do. But whether he followed the law or not, he completely took that issue away from the jury. He said stop thinking about that. You don't need to think about that. I think so. We do try not to read too much into the jury instructions, as well as to the time that they spend deliberating. But I think in this case we had a jury which a few hours into its deliberation gave that note, and then they continued deliberating after reaching it, and then they continued deliberating to the next day. So I think that the record does suggest that the jury was looking at all of the evidence. And so to say that this was the issue that they were – that prevented them from reaching a decision earlier, I think is one way of reading the record, but there's another way of reading it. I think that the jury was looking at all of the evidence and taking its role as a fact finder very seriously in this case. And I do want to say, because the defendant brought up the possession of the motor vehicle statute, the legislature could have written this statute another way if it wanted to make knowledge of the defacement. It's a separate element, and it chose not to do so in this case. Again, after nine years of Stanley, reaffirmed in Falco, reaffirmed in – The legislature didn't make any mentoring requirements. It did. If you look at the history of the 2003 amendment, where it changed the prima facie evidence to making it its own separate offense, the legislature didn't talk on the floor much about why they were doing that, but if you look at other parts of the same public act, they added a new heightened defense for firearms trafficking, and they sought to extend the statute of limitations. So I think we do get some legislative intent that they were really trying to crack down on the mere possession of these dangerous firearms. Looking into that. But we can compare a statute like the aggravated vehicular hijacking with aggravated battery, which I think does give us some guidance here. In Harris, which is another case which interpreted Stanley and relied on it, just recently, in 2017, said that the elements of that offense were knowingly took a motor vehicle by force and that the victim was physically handicapped, not that the defendant had knowledge of the victim's handicap. Again, relying on Ivey and Stanley. It said Stanley differentiated between the act of gun possession from the knowledge of the character of the gun. Again, we know that to have a legislature intended to impose such a knowledge requirement, it could easily have done so by amending the section referring to aggravated vehicular hijacking. But counsel, that statute was completely different. I mean, that statute had a separate statute for vehicular hijacking with a knowingly requirement. And they had a separate statute that said if you commit that statute plus the victim is handicapped or whatever. Exactly. So as a textual matter, it's pretty easy to say there's no knowing requirement. You take the victim as your fine. Right. But the difference there is, again, the mens rea requirement went to the part that was illegal, right? What was illegal was taking the car by force. That had a knowledge requirement. It had to. And if it didn't, a court by now would have put one in because that is what makes it a crime. The character of the victim is an aggravating factor. That's what makes it aggravating. That's all it is. And I don't know of any case law that says that we have to require a mens rea for an aggravating factor like that. Right. Isn't this more like those old chop shop cases from the 90s where the Supreme Court, where a statute was passed saying that you can't have a car certificate that hasn't been properly transferred or properly assigned and there was no mens rea requirement? The court said, no, we're going to put knowledge in and you have to know that it wasn't properly assigned because that's the part that's illegal. Possessing a car title is not illegal. Everybody in this room has a car title. But you have to know the part that makes it illegal. Isn't that your problem here? Possessing a gun is not a crime. Possessing a gun with a defacement is the crime. And that does not have a mens rea requirement. Right. Well, I think if we just look at a rifle, you're not necessarily going to know if it's an automatic. If you look at a shotgun, a lot of people aren't going to get out a measuring tape and determine whether or not the barrel length is 18 inches. The legislature is saying knowingly possess, but it's on you to figure out whether or not you can lawfully possess this. Firearms are kind of different from the possession of other things. They're constitutionally protected in one sense, if they're lawful weapons. But there are some that we just don't tolerate in this state. We can compare this to maybe possession of a controlled substance, where the elements are knowing possession of the controlled substance, and the courts have interpreted that to mean knowledge of the presence of the controlled substance as well as a separate element, the possession itself. And sometimes you show possession through knowledge of where it is. But the purpose of something like the controlled substance statute is, you know, we know that controlled substances are going to be in Illinois, but we're really regulating when and where and what circumstances they can exist, and that's why we have this knowledge of the presence of it. The Illinois legislature is saying, you know, we still have to show knowing possession of the firearm, but you've got to know that it's a firearm you can lawfully possess. That's why knowledge just goes to the act in this case and not to the presence of the characteristic of the defacement, which is why I think the legislature hasn't changed the statute since Stanley, Falco, Laws, Harris. And all these other cases that have interpreted this way. If there are no further questions on that issue, I just wanted to fairly briefly address the jury note. I think when defendant says that they were confused, again, this is something that we are reading that into the jury note, and I think the record doesn't necessarily give us that interpretation, so it's not something that we can use to show that there was really any error here, and the trial court did not abuse its discretion when it gave the answer based exactly on what Stanley and Falco said. Again, something else about this issue that we note in our brief is that we have the judge's discussion of what the note was on the record. We don't actually have the notes or the judge's written response to it, so we are just looking at the judge's reading of it, but I don't think given the judge's actions and the law that there was any abuse of discretion or that any error possibly prejudiced the defendant. And finally, with the third issue, both of these issues, sub-issues under the third issue were forfeited. Defendant only argues first prong of plan error, and we just don't have under Sevey and Naylor equally balanced evidence here. What we have is several officers, Ducar, Hines, Losario, Goins, they see this defendant who's in possession of a firearm that's been defaced. Goins says he talked to the defendant afterwards and he said he bought it knowing it was defaced. We also have this, again, the circumstantial evidence that he knew the gun was there before. He reached for it showing that there was an opportunity for him to tell whether or not the fire was defaced, even if that was a requirement. The defendant's version of events just didn't add up in the same way. What we had was he was going to drop someone off, goes to McDonald's on the way, sees some other people, they somehow just link up together, they're standing around for five minutes, a car comes by, and he says he just started running because other people were running and he didn't know the neighborhood. But, I mean, that just doesn't reflect human reality as much as the testimony that the police officers gave us. His conduct is, frankly, quite inexplicable that he would just start running, even though, I mean, the car was there, apparently, and we had another individual who didn't run. So I think when we look at this evidence, we just don't have two equally plausible versions of events that this would have been prejudicial under the first prong of the plain error test. But even so, I just wanted to mention the motion in Lemonade. I mean, what we had was a motion in Lemonade saying that there shouldn't be any reference to the area of this incident as being a high-crime area, but there was no testimony or comment that this was a high-crime area. The officers testified to the fact that they were there because they were going to do a controlled by. That's why we had the surveillance officers and the enforcement officers and the undercover officers. These are things that the jury wouldn't necessarily know if they didn't have a lot of experience of the criminal justice system. So I think when we talk about this issue, we have to remember that police officers kind of have to tell the jury why they were there, what they were doing, who these people were. And then the jury would understand, okay, that's why they're in constant radio contact. That's why they're looking so closely at their surroundings. That's why when they see these two cars driving around the block in tandem, it looks kind of suspicious. But another thing I wanted to point out, just to distinguish this case from people versus a G, is the testimony was that when they set up this controlled by, it was at 79th and Yates, and that was the area that was known as this high narcotics trafficking area. But then the officers follow the car for over a mile is when, I think it was Officer Hughes says, he peeled off so it wouldn't look like, so the defendant wouldn't think that he was being followed, and then other officers continued. So the area the defendant chose to go to wasn't actually the area that the officers described as being the high-crime area. He was driving around the neighborhood and then left. So I don't think we have, A, a case where the motion when it was violated. B, we don't have really the same, quite the same concern that happened in people versus a G. And again, the evidence wasn't closely balanced in this case. If there are no further questions. Thank you. We would ask the court to affirm the defendant's convictions for these reasons and the reasons stated in their brief. Thank you. I'd just like to first address the State's last argument about the inadmissible evidence. The high-crime area evidence was to be excluded by the judge's order. And we argue that eliciting testimony from four different officers about the narcotics reputation and the controlled by, they might not be the exact same words as high-crime area, but they're the exact same effect in this case. And they did have the effect of prejudicing the jury against Mr. Lee, especially when they were very clearly struggling to deliberate over a lot of facts and issues of law in this case. And so having elicited that testimony from four officers and not just one was very prejudicial, and that would constitute plain error in this case, even if this court does find that to be forfeited. The evidence was close here, but it was also just plain error. And so we would argue that those are grounds where this court could reverse and remand for a new trial without that prejudicial evidence. And then just briefly, the State, of course, discusses that they did put on evidence to prove the fact of possession and to prove the fact of actual defacement, but not about the knowledge. And several points were made that the State should have to prove both the status of the possessor and the status of the weapon and the character of the weapon as having been defaced. So we just reiterate that and want to also mention that some of the statutes that the State brought up, for example, the purpose of the aggravated vehicular hijacking statute, the purpose of that statute is to protect the victim, whereas here this statute is about the gun. And so those are different here. And so, again, we reaffirm our arguments from the brief and do ask this court to reverse Mr. Lee's conviction. Thank you. You both were very enjoyable. The interesting thing is there were a lot of specific questions, and both of you handled yourself very well on your feet. And a lot of the questions you may not have thought of before being here. So I have to say we were very impressed by both of you. So have a good holiday.